IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| PARADYME MANAGEMENT, INC., | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-17-3687 |
| MARY ELLEN CURTO, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paradyme Management, Inc. ("Paradyme") brought this action against its former employee, Defendant Mary Ellen Curto ("Ms. Curto"), for violations of state and federal law, to include breach of contract and misappropriation of trade secrets, revolving around Ms. Curto's alleged retention of Paradyme's confidential information following the termination of her employment. Compl., ECF No. 1. I granted Paradyme's Motion for a Preliminary Injunction, ECF No. 9, following a hearing that Ms. Curto did not attend, despite my finding that she had actual notice of it. Thereafter, when Ms. Curto complained during a status call that the injunction interfered with her ability to find new employment, I suggested that the parties meet with Magistrate Judge Timothy J. Sullivan to see whether they could agree to a consent order that would govern this case, so that the preliminary injunction could be withdrawn, allowing Ms. Curto to find new employment more readily. With the capable assistance of Judge Sullivan, the parties negotiated a consent order, and I signed it, making it an order of this Court. Sealed Consent Order, ECF No. 57.

Paradyme has moved to enforce the Sealed Consent Order. ECF No. 67.[1] I find that the Sealed Consent Order is enforceable but does not prohibit Ms. Curto from acting in good faith to report alleged fraudulent activity by Paradyme to the U.S. Government, with which Paradyme has various contracts. However, based on the record before me, I am unable to determine if Ms. Curto seeks to report Paradyme's alleged fraudulent activities in good faith and if the information she acquired as an employee at Paradyme (and now retains) fits within the exception of the Non-Disclosure Provision of her Employment Agreement. Therefore, discovery may proceed to determine if Ms. Curto's retention of information and subsequent disclosures were to pursue her purported False Claims Act ("FCA") claim in good faith.

## **Background**

Paradyme provides management, information technology, and finance business solutions predominately through federal government contracting. Findings of Fact & Conclusions of Law 4, ECF No. 26. In July 2017, Paradyme hired Ms. Curto as Director of Corporate Operations. *Id*. at 5. Before commencing her employment, Ms. Curto was required to sign an Employment Agreement that contained a "Non-Disclosure" provision and a "Return of Materials" provision. *Id*. at 5–6. Paradyme terminated Ms. Curto's employment on December 4, 2017 for performance-related issues and revoked Ms. Curto's access to its document management system, a cloud-based Google Drive. *Id*. After terminating Ms. Curto's employment, Paradyme discovered that she had linked two unauthorized email addresses to its system. *Id*.

---

[1] The parties fully briefed the motion. ECF Nos. 68, 70, 72. A hearing is not necessary. *See* Loc. R. 105.6.

Paradyme filed its seven-count Complaint on December 13, 2017, alleging that Ms. Curto violated the Non-Disclosure and Return of Materials Provisions of her Employment Agreement[2] as well as state and federal laws. Compl. 6–8. Additionally, Paradyme alleged that it believed that Ms. Curto would use its confidential information in future legal action directed against it. *Id.* at 9.

Paradyme moved for a Temporary Restraining Order, ECF No. 2, which was granted on December 14, 2017, ECF No. 7. I then held a hearing on Paradyme's Motion for a Preliminary Injunction on December 21, 2017. ECF No. 10. Ms. Curto did not attend the hearing, but I found that she had notice of it and that there was sufficient evidence in the record to enter a Preliminary Injunction against her, which was entered that same day. Prelim. Inj., ECF No. 9; Findings of Fact & Conclusions of Law 9–11, 19.

After Ms. Curto filed a request to quash the Preliminary Injunction—and at my recommendation—the parties met with United States Magistrate Judge Timothy J. Sullivan to discuss formalizing a consent order, which would permit the withdrawal of the Preliminary Injunction, which, Ms. Curto represented, was preventing her from obtaining new employment. On February 21, 2018, the parties memorialized an agreement under seal that I signed, making it an order of this Court, and which led to the withdrawal of the Preliminary Injunction against Ms. Curto. Sealed Consent Order. Under the terms of the Sealed Consent Order, Ms. Curto is prohibited from disclosing any of Paradyme's confidential information as defined in the Non-Disclosure Agreement signed at the beginning of her employment. *Id.* ¶ 2.

---

[2] Both parties submitted the Employment Agreement that contains the definition of confidential information and the Non-Disclosure Provision. Paradyme Provided Employment Agreement, ECF No. 2-4; Curto Provided Employment Agreement, ECF No. 29-4. Perhaps by accident, perhaps otherwise, the page containing the definition of "confidential information" is missing from Ms. Curto's version. *Compare* ECF No. 2-4 *with* ECF No. 29-4.

On March 23, 2018, Paradyme moved to enforce the Sealed Consent Order, arguing that Ms. Curto intends to violate the Sealed Consent Order by disclosing Paradyme's confidential information.  Pl.'s Mot.

## Discussion

*Enforcing the Sealed Consent Order*

"[A] consent order is a valid contract between the parties that is judicially enforceable." *A.H. Smith Assocs. Ltd. P'ship v. Md. Dep't of Env't*, 695 A.2d 1252, 1257 (Md. Ct. Spec. App. 1997).  Absent demonstrating that the consent order is unconscionable or was made under duress,

> "[t]he fact that one of the parties may have changed his or her mind shortly before or after the submitted consent order was signed by the court does not invalidate the signed consent judgment." The contractual nature of the consent decree meant that when there was uncoerced "bargaining for the reciprocal promises made to one another" the end product should not be disturbed.

*Suter v. Stuckey*, 935 A.2d 731, 739 (Md. Ct. Spec. App. 2007) (*quoting Chernick v. Chernick*, 610 A.2d 770, 777 (Md. Ct. Spec. App. 1992) (alteration in original).

Here, the parties entered into the Sealed Consent Order—with the aid of Judge Sullivan (and signed by me)—which led to my withdrawing the Preliminary Injunction against Ms. Curto. Sealed Consent Order 1.  It prohibits Ms. Curto from disclosing "to any person or entity any confidential information of Paradyme as defined in the non-disclosure agreement Ms. Curto signed when she began her employment with Paradyme." *Id.* ¶ 2.  Paradyme seeks to enforce the Sealed Consent Order because it believes Ms. Curto either intends to violate, or has already violated its terms by stating her intention to provide Paradyme's confidential information and

information from this litigation to an attorney, as well as U.S. Government officials.[3] *See, e.g.*, Disclosure Emails 4, 9, ECF No. 68-1; Curto & Luse Mar. 11–22, 2018 Emails 3, ECF No. 68-2. Paradyme argues that the Sealed Consent Order is enforceable, as the Non-Disclosure Provision "does not bar her from lawfully reporting waste, fraud, or abuse on a federal contract," and therefore, it does not conflict with public policies protecting whistleblowers. Pl.'s Mem. 3, 8. Ms. Curto argues that "she agreed to sign the [Sealed Consent Order] as long as it was noted that she was not agreeing to the terms of the Order which [she] believes are illegal and unconstitutional."[4] Def.'s Opp'n 2. Ms. Curto also argues that the Sealed Consent Order and the Non-Disclosure Provision do not prevent her reporting fraud on the government. *Id.* at 9; *see also* Disclosure Emails 4 ("NDAs aren't enforceable against At Will employees and they certainly aren't enforceable to prevent the reporting of fraud against the US Government."). Further, Ms. Curto argues that Paradyme's contracts with the federal government required compliance with 48 C.F.R. § 52.203-19, which prohibits federal contractors from requiring its employees to sign non-disclosure provisions that prevent the reporting of fraud to the government, and therefore, the Sealed Consent Order and Non-Disclosure Provision of her Employment Agreement should be invalidated. Def.'s Opp'n 2–9.

---

[3] In its reply, Paradyme has provided emails that appear to demonstrate that Ms. Curto already has contacted officials at the Office of the Inspectors General ("OIG") for the U.S. State Department and the Small Business Administration ("SBA"). Curto & Luse Jan. 24–Mar. 14, 2018 Emails 1–3, ECF No. 72-1. Of greatest concern, it appears Ms. Curto made contact with the SBA OIG while the Preliminary Injunction was in place in this case. *Id.* at 1.

[4] Ms. Curto has not demonstrated that she was coerced into signing the Sealed Consent Order or that she was defrauded in the process. Further, the parties worked with Judge Sullivan, who assisted them in reaching a mutually agreeable order. There is nothing in the record that would permit any reason to doubt that Judge Sullivan was anything other than fair and impartial, to ensure that the process of reaching an agreement was done so without fraud or coercion. Absent evidence that demonstrates Ms. Curto was coerced into signing the agreement, her change of heart as to its terms does not invalidate the agreement. *See Suter*, 935 A.2d at 739.

Although Ms. Curto believes that 48 C.F.R. § 52.203-19 invalidates the Sealed Consent Order, it has no bearing on the enforceability of the Sealed Consent Order in this case.[5] Specifically, that provision states that

> The Contractor shall not require its employees or subcontractors to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting such employees or subcontractors from lawfully reporting waste, fraud, or abuse related to the performance of a Government contract to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information (e.g., agency Office of the Inspector General).

48 C.F.R. § 52.203-19(b). Ms. Curto construes this subparagraph as a blanket prohibition of confidentiality agreements, but it is not. This is because the definition for confidentiality agreements excludes "confidentiality agreements arising out of civil litigation or confidentiality agreements that contractor employees or subcontractors sign at the behest of a Federal agency." 48 C.F.R. § 52.203-19(a). As the Sealed Consent Order is an order of this Court and replaces a previously entered Preliminary Injunction, it is not precluded by this provision. *See id.*

However, even if the C.F.R. provision did apply to the Non-Disclosure agreement in Ms. Curto's employment contract, many of the actions Ms. Curto intends to take or has taken are not prohibited by the clear language of that Agreement, which was incorporated into the Sealed Consent Order. Sealed Consent Order ¶ 2 ("Ms. Curto shall not take any action, directly or through others, to access or disclose to any person or entity any confidential information of Paradyme *as defined in the nondisclosure agreement.*") (emphasis added). Additionally, Paradyme agrees that the Sealed Consent Order adopts the Non-Disclosure Provision in its entirety, as it references the two agreements interchangeably throughout its memorandum. *See*

---

[5] This is a new provision of the Federal Acquisition Regulation, which was enacted on January 19, 2017. 48 C.F.R. 52.203-19. My research has failed to locate (nor have the parties identified) any helpful case law interpreting this provision; nevertheless, I find that the plain text of the provision dictates the outcome in this case.

Pl.'s Mem. 3, 7 ("A. Enforcement of the Non-Disclosure Agreement Does Not Violate Public Policy," "B. 48 C.F.R. § 52.203-19 Does Not Invalidate Ms. Curto's Non-Disclosure Agreement"); Pl.'s Reply 2 ("[Paradyme's] non-disclosure agreement does not conflict with FAR 52.20319 [sic] and, therefore, the non-disclosure agreement, and Sealed Consent Order, should be enforced.").

The non-disclosure provision provides that

> [b]oth during my employment with Company and at all times thereafter, I will not use for my own benefit or for the benefit of others, or disclose or divulge to others, in any manner whatsoever, any Proprietary and/or Confidential information, except as expressly authorized by Company in the course of my employment with Company, and *except as may be required by law or legal process as provided hereafter*.

Employment Agr. 3 (emphasis added). Despite Ms. Curto's arguments that the Non-Disclosure Provision is overly restrictive, Def.'s Opp'n 3; Def.'s Ltr. to Dismiss Default 3, ECF No. 81, it is not. The phrase "except as may be required by law or legal process," provides sufficient protections for Ms. Curto to make any required reporting.[6]

In examining whether confidentiality agreements are enforceable, courts have upheld them so long as they permit the reporting of fraud on the government. *X Corp. v. Doe*, 805 F. Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent [a confidentiality agreement] prevented disclosure of evidence of a fraud on the government, that Agreement would be void as contrary to public policy. In other words, X Corp. cannot rely on any contract to conceal illegal activity."); *Siebert v. Gene Sec. Network, Inc.*, No. 11-1987-JST, 2013 WL 5645309, at *7 (N.D. Cal. Oct. 16, 2013) ("Nothing in the FCA addresses confidentiality agreements, nor the potential

---

[6] The Office of Inspector General of the State Department—one of the offices to which Ms. Curto has reported—has stated that a policy must "specifically preclude disclosures to government agencies or officials" for it to be deemed overly restrictive. Office of Inspector Gen., U.S. Dep't of State, ESP-15-03, *Review of the Use of Confidentiality Agreements by Department of State Contractors* 5 (2015).

liability relators may incur by virtue of their obligations of confidentiality to former employers. However, if a substantial public interest would be impaired by enforcement of the agreement, the agreement may be unenforceable.") (internal quotation marks omitted) (quoting *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995)); *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004) ("Relator could have disclosed the documents to the government under any circumstances, without breaching the confidentiality agreement.").

In conjunction with finding that confidentiality agreements permit individuals to report fraud on the federal government, courts also have found that to do so implies that the reporting individual may need to retain related documents. The False Claims Act provides that when a private person brings an action on behalf of the U.S. Government, "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government . . . ." 31 U.S.C. § 3730(b)(2); *see also Siebert*, 2013 WL 5645309, at *8 ("any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the False Claims Act"); *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009) ("Enforcing a private agreement that requires a *qui tam* plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial, to the [party] who is under investigation would unduly frustrate the purpose of this [FCA] provision."); *Shmushkovich v. Home Bound Healthcare, Inc.*, No. 12 C 2924, 2015 WL 3896947, at *3 (N.D. Ill. June 23, 2015) (" These courts recognize that the public policy interests underlying the FCA support relators' potential need to take possession of evidence in a manner that might otherwise violate common discovery practice, and that

confidential information will often be the only means by which an FCA plaintiff can prove a qui tam action.").

Paradyme argues that the Court should rely on *Zahodnick v. IBM Corp.*, 135 F.3d 911 (4th Cir. 1997), as setting forth the applicable law in this case. Pl.'s Mem. 4; Pl.'s Reply 3. In *Zahodnick*, an ex-employee sued his former employer for wrongful termination under the FCA. 135 F.3d at 913–14. The Fourth Circuit held that Zahodnick had to return all confidential materials to IBM because there was no evidence he had brought an FCA claim, but instead "had merely informed a supervisor" of a "mischarging error," and as such, he could not retain them for an FCA claim. *Id.* at 914. However, this case is distinguishable because there is at least some evidence indicating that Ms. Curto has "initiated, testified for, or assisted in the filing of a *qui tam* action" or was "acting in furtherance of a *qui tam* action." *See id.* (internal quotation marks omitted); *see generally* Disclosure Emails 1, 4, ("I am going forward with Qui Tam representation."; "[A]ny documents I have will be in the possession of an attorney specifically to investigate fraud against the United States."); Curto & Luse Jan. 24–Mar. 14, 2018 Emails 1, ECF No. 72-1 ("This is to advise you that I have completed a verbal intake with the HubZone OIG office regarding Paradyme.").

While Paradyme concedes that "Ms. Curto has a right to engage in such whistleblowing activity," it argues that "Ms. Curto should not be permitted to use in any way confidential information and documents" in that whistleblowing activity.[7] Pl.'s Mem. 7; Pl.'s Reply 5.

---

[7] Paradyme repeatedly expresses an unsubstantiated concern that a failure to enforce the Sealed Consent Order may result in Ms. Curto manipulating its documents. Pl.'s Reply 5; Gandhi Aff. ¶ 26, ECF No. 2-2. However, at least one court has noted that whistleblower appropriation of documents is an important method of preventing document manipulation by employers. *Erhart v. BofI Holding, Inc.*, No. 15-2287-BAS-NLS, 2017 WL 588390, at *12 (S.D. Cal. Feb. 14, 2017). Further, Paradyme already has made a forensic copy of the hard drive of Ms. Curto's laptop. If Ms. Curto has "doctored" any of Paradyme's documents and delivered them to the

However, the FCA and case law on the subject belie this position. *See* 31 U.S.C. § 3730(b)(2); *Head*, 668 F. Supp. 2d at 152; *Siebert*, 2013 WL 5645309, at *8. Accordingly, the Sealed Consent Order, which incorporates the Employment Agreement's Non-Disclosure Provision, is enforceable, but does not prohibit a good faith reporting of illegal activity such as fraud on the U.S. Government, or the use of documents otherwise precluded from disclosure for this purpose.

*Good Faith Reporting and Required Discovery*

Although non-disclosure agreements may be ineffective to prevent an employee from reporting fraudulent activity, they do permit employers to seek recourse against an employee for using confidential information other than in good faith to report fraud on the Government. *See X Corp.*, 805 F. Supp. at 1310 n.24. Courts have incorporated a factor of "good faith" into determining liability for an employee's taking of confidential information. *See generally Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (holding that to receive FCA protections, an employee must believe fraud is afoot "in good faith"); *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys. Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (filing a 733-page complaint showed bad faith by ex-employee); *Glynn v. EDO Corp.*, No. JFM-07-1660, 2010 WL 3294347, at *3 (D. Md. Aug. 20, 2010) (finding that the improper taking of documents and subsequent improper assertion of privilege showed bad faith warranting sanctions).

And, while an individual may be permitted to report fraudulent activity, if she confiscates documents that are unnecessary for that purpose, she may be liable to the employer for breaching the non-disclosure agreement. *Cafasso*, 637 F.3d at 1062 (holding that, despite a public policy exception to non-disclosure agreements, "Cafasso's grabbing of tens of thousands of documents

---

Government for use in a False Claims Act case, Paradyme will have the means to show that the documents had been manipulated.

10

here is overbroad and unreasonable"); *Nesselrotte v. Allegheny Energy, Inc.*, 615 F. Supp. 2d 397, 408 (E.D. Pa. 2009) (finding that, even if the defendant was unable to prove actual damages as a result of employee's breach of a confidentiality agreement, the employer would still be entitled to nominal damages). *But see Zahodnick v. IBM Corp.*, No. CCB-94-3569, slip op. at 6 (D. Md. Oct. 15, 1996) (finding defendant employer not entitled to damages because there was no evidence of loss resulting from employee's retention of documents). To determine which documents were permissibly or wrongfully retained by an employee, courts differentiate between those documents that are necessary for a *qui tam* action and those that are not. *Cafasso*, 637 F.3d at 1052, 1062 ("courts perhaps should consider in particular instances for particular documents whether confidentiality policies must give way to the needs of FCA litigation"); *Siebert*, 2013 WL 5645309, at *8 ("[T]he Court cannot now conclude that the [employer's claim for breach of confidentiality agreement] in its entirety should be dismissed, because it is possible that Siebert also took confidential documents that bore no relation to his False Claims Act claim."); *Erhart v. BofI Holding, Inc.*, No. 15-2287-BAS-NLS, 2017 WL 588390, at *12–13 (S.D. Cal. Feb. 14, 2017) (holding that the reporting individual bears the burden of proving the removal of the documents was reasonably necessary to support the allegations of wrongdoing) (internal quotations omitted); *Shmushkovich*, 2015 WL 3896947, at *2 ("The protections afforded self-help discovery under the False Claims Act, however, have only extended to the collection of materials that are reasonably related to the formation of a case.").

Here, discovery is required to determine what documents Ms. Curto possesses, and which are or were required for her to bring a good faith FCA claim (if one exists). At this time, the record before the Court is insufficient to make such a determination. Accordingly, the Court will exercise its "broad discretion in . . . delimiting the scope of discovery in a given case" to identify

what Ms. Curto may retain in order to bring a FCA claim. *See Shmushkovich*, 2015 WL 3896947, at *3.

First, only disclosure of information made in good faith and for the purpose of reporting fraud against the Government is beyond the reach of the Non-Disclosure Agreement. Therefore, it would be wise for Ms. Curto to consider refraining from any new disclosures until it can be determined if any disclosures she has made to this point have been proper. *See X Corp.*, 805 F. Supp. at 1302 n.7. She has stated that, "[w]ithout providing any documents," she "has provided information of this lawsuit to" seven or eight agencies, including the Inspectors General of the Departments of Commerce, State, Health and Human Services, Army, Defense, the SBA, and the General Services Administration, as well as reporting some information to the Federal Bureau of Investigation. Def.'s Ltr. to Dismiss Default 3. It is unclear what information Ms. Curto has provided to these agencies, and whether the information that she has provided to the agencies is pertaining to "this lawsuit" or a potential *qui tam* action. *See* Def.'s Opp'n 2 (stating that she filed a report to the Inspectors General of the Small Business Administration and the State and Commerce Departments "making them aware of the existence of lawsuit Case No. 8:17-cv-03687-PWG which is in direct violation of FAR 52.203.19").

Second, Paradyme may initiate discovery to determine (1) what documents Ms. Curto has in her possession; (2) what information she has given to others, including any federal agencies[8];

---

[8] At this time, the Court is aware of contradictory details regarding Ms. Curto reporting alleged fraudulent activity. Ms. Curto stated in a February 28, 2018 email to Plaintiff's counsel that "[Paradyme is] guilty of HubZone Fraud and the documentation will be provided tomorrow[]," while also stating on April 2, 2018 that she "was NOT providing any details or assertions of fraud by the Plaintiff" in her discussions with federal agencies. Pl.'s Mem. 5; Def.'s Opp'n 2–3.

12

(3) clarify the extent of communication she has had with those agencies[9]; and (4) identify the individuals and agencies to which she has disclosed information related to this litigation or Paradyme.[10]

Third, Paradyme may discover what documents Ms. Curto intends to rely upon to bring a *qui tam* action so that it may seek the return or destruction of any documents within the scope of the Non-Disclosure Agreement not necessary for this purpose. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys. Inc.*, No. 06-1381-PHX-NVW, 2009 WL 3723087, at *3 (D. Ariz. Nov. 4, 2009) ("The Court ordered that [General Dynamics] was entitled to be given usable, practical disclosure whether under Rule 26(a) or under a crafted order from the Court as to what it is [Cafasso was] relying on for [her] case against them.") (internal quotation marks omitted); *see also Shmushkovich*, 2015 WL 3896947, at *3 ("Rine may retain copies of any documents he determines are relevant to his claims under the False Claims Act. Requiring Rine to return documents that he will inevitably receive in discovery is a formality that has been obviated by the circumstances of the case (i.e., Rine already has copies of the documents and Home Bound knows what documents he has) and will only serve to unnecessarily increase the expense and extend the length of the litigation. Rine must also destroy any documents that are not relevant to his claims. Additionally, Rine must provide Home Bound with a list of the documents he retains.").

---

[9] In her Opposition, Ms. Curto states that Paradyme is falsely representing to the Court the extent of her communications with federal agencies, claiming that the extent of her communications was a telephone call with the SBA OIG Hotline and the filing of reports to make agencies aware of the current lawsuit. Def.'s Opp'n 2. Her emails from March appear to indicate that that is not the case. Curto & Luse Jan. 24–Mar. 14, 2018 Emails 1–2 ("I have completed a verbal intake with the HubZone OIG office regarding Paradyme"; "I have commenced an OIG investigation into PMIs fraud").

[10] In her letter dated April 24, 2018, Ms. Curto provided a list of agencies she has already contacted. Def.'s Ltr. to Dismiss Default 3.

Fourth, upon receipt of the list of federal agencies and individuals Ms. Curto has contacted, I will consider the advisability of asking them to submit an *amicus curiae* brief to assist me in making the determinations discussed above. *Bryant v. Better Business Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 728 (D. Md. 1996) ("The aid of *amici curiae* has been allowed at the trial level where they provide helpful analysis of the law, *see, e.g., Waste Mgmt. [of Pa. v. City of York]*, 162 F.R.D. [34,] 36 [(M.D. Pa. 1995)], they have a special interest in the subject matter of the suit, *Strasser v. Doorley,* 432 F.2d 567, 569 (1st Cir. 1970), or existing counsel is in need of assistance, *United States v. Gotti,* 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) . . . .").

**ORDER**

Accordingly, it is hereby ORDERED that Paradyme's Motion to Enforce Judgment Sealed Consent Order, ECF No. 67, IS GRANTED IN PART as follows: The Sealed Consent Order is enforceable during the pendency of this litigation, within the parameters discussed above. Specifically, the Sealed Consent Order does not prohibit Ms. Curto from reporting in good faith illegal activity to the government, or from disclosing to the government information within the scope of the Non-Disclosure Agreement for that limited purpose. Discovery may proceed as explained above to determine the extent of any disclosures made by Ms. Curto, and whether they were for a permissible purpose.[11]

Dated: May 24, 2018                                             /S/
                                                        Paul W. Grimm
                                                        United States District Judge

---

[11] Paradyme sought and I entered an order sealing the filings related to this motion, ECF No. 83, and, presumably, would request that this order be sealed. Because the consent order itself was sealed, this was neither unusual nor unreasonable. But courts should be cautious about issuing blanket sealing orders that remove from public view important aspects of litigation that deals with subjects of public interest, as this case does. And, while *qui tam* actions are filed under seal and remain so for a period of time, the record before me is far from clear that any *qui tam* action actually has been initiated by Ms. Curto. After trying to redact portions of this order, it became apparent that removing any reference to the sealed Consent Order or the facts underlying the motion to enforce it would result in the filing of a redacted document that was all but meaningless to a reader. And on fuller consideration, I no longer am of the view that the Consent Order or this order require sealing. But, before unsealing them I will afford the parties an opportunity to file a letter no more than three pages in length providing their views on whether I should do so. The letters will be filed simultaneously, on or before June 17, 2018 and will only address the issue of whether this order and the Consent Order should be under seal. Until I have reviewed these submissions, the Clerk is directed to maintain this order under seal.