**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|   |   |   |
|---|---|---|
| PARADYME MANAGEMENT, INC., | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: PWG-17-3687 |
| | * | |
| MARY ELLEN CURTO, | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND SHOW CAUSE ORDER**

Plaintiff Paradyme Management, Inc. ("Paradyme") brought this action against its former employee, Defendant Mary Ellen Curto ("Ms. Curto"), for violations of state and federal law, to include breach of contract and misappropriation of trade secrets, revolving around Ms. Curto's alleged retention of Paradyme's confidential information following the termination of her employment.  Compl., ECF No. 1.  Since this case began, Ms. Curto, who is proceeding without counsel, has continuously engaged in conduct that violates the Federal Rules of Civil Procedure and orders of this Court, has used an address on her filings that resulted in their return to the Court because they were non-deliverable, and has behaved in a patently disrespectful manner towards counsel for the Plaintiff despite being cautioned by the Court that doing so was unacceptable behavior.  Specifically, Ms. Curto (1) has failed to comply with numerous court orders; (2) has demonstrated bad faith by signing a consent order with the Plaintiff (negotiated with the assistance of a United States Magistrate Judge) when she had no intention of abiding by it, in order to gain the benefit of the withdrawal of the Preliminary Injunction entered against her;

1

(3) has violated the Court's Local Rules; (4) has continued to use disparaging language towards her adversaries after being instructed to stop; and (5) has abused the courtesy afforded by the Court in emailing to her copies of orders filed by the Court in addition to copies sent by regular mail, to ensure that she received court filings contemporaneously with Plaintiff, which is represented by counsel.[1]  Because of the nature and persistence of this conduct, and to ensure that future proceedings in this case are conducted properly, Ms. Curto will be ordered to show cause why she should not be sanctioned by the Court, including, if appropriate, entering a default judgment, holding her in contempt, or imposing a monetary sanction.

## Background

*Procedural History & Dilatory Conduct*

Paradyme filed its seven-count Complaint against Ms. Curto on December 13, 2017, ECF No. 1, and requested a Temporary Restraining Order ("TRO") and Preliminary Injunction, ECF No. 2.  I required Paradyme to contact Ms. Curto, to have both parties participate in a telephone conference the following day.  ECF No. 4.  Paradyme's counsel, Jaime Walker Luse, complied with my order (in part by notifying Ms. Curto, by using an email address from which Ms. Curto had sent communications to Paradyme) and informed Ms. Curto three times of its filing and the scheduled telephone conference.  ECF No. 6.  Ms. Curto did not provide Paradyme's counsel with a telephone number where she could be reached for the conference call, and she did not participate in the conference call to schedule a TRO hearing.  I issued a TRO and scheduled a preliminary injunction hearing for December 21, 2017.  Order Granting TRO, ECF No. 7.

---

[1] In this District, *pro se* parties are ineligible to electronically file papers using the Case Management/Electronic Case Files ("CM/ECF"), or from receiving simultaneous notification of filings by opposing counsel or the Court through CM/ECF.

As scheduled, the preliminary injunction hearing was held, and Ms. Curto again did not appear, despite having knowledge of the date and time of the hearing. Finding of Fact & Conclusions of Law 1, ECF No. 26. Having found sufficient evidence in the record, I entered a preliminary injunction against Ms. Curto on December 21, 2017. ECF Nos. 9, 10. During the preliminary injunction hearing, I found that Paradyme had provided Ms. Curto with actual notice via email but was unable to effect personal service because Ms. Curto refused to provide a residential or business address for herself or for the counsel she claimed to be working with; the address she provided Paradyme during her employment was actually a P.O. Box. I also found that the process servers Paradyme hired to effect personal service had attempted service at multiple addresses but failed. Finding of Fact & Conclusions of Law 3–4. Ms. Curto finally was served a copy of the Complaint, the Summons, and my Orders granting the TRO and Preliminary Injunction at this Courthouse on January 4, 2018, when she agreed to meet with Ms. Luse. ECF No. 23.

On January, 2, 2018, I issued an order regarding the filing of motions, which requires any party who wants to file a discovery or substantive motion to submit a short letter to the Court setting forth the basis for the motion, after which a conference call is scheduled with the Court to discuss the intended motion, to determine whether it could be resolved without formal briefing, and if not, to set a schedule for briefing the issue. Pre-Motion Order, ECF No. 20. Within my Order I also clearly stated that should one party file such a letter, the other is not to respond absent the Court requesting that they do so.[2] *Id.* That same day, Ms. Curto filed a motion to dismiss the TRO. ECF No. 19. Because she would not have received the Pre-Motion Order yet,

---

[2] I require this procedure to "promote the just, speedy, and inexpensive resolution" of each of the cases before me. Fed. R. Civ. P. 1; *see also* Fed. R. Civ. P. 16(a)(2)–(3) (permitting the Court to use procedures to effectively manage the case in the pretrial phase).

I did not strike her motion and scheduled a telephone conference, which was then held on January 16, 2018.  ECF Nos. 17, 25.  During that telephone conference, Ms. Curto provided 2021 L St., NW, Washington, D.C. 20036 as her mailing address, and stated that she wished to take advantage of the Court's offer to send her a courtesy email containing any orders filed by the Court (as well as a copy by first class mail) so that she would receive rulings as promptly as counsel for Paradyme, who received them via CM/ECF.  ECF No. 25.  Following the telephone conference, I issued a Letter Order memorializing the call, and a courtesy copy of the Letter Order was sent to her via email and another copy by first class mail.  *Id.*  Attached to the email was a copy of the Findings of Fact & Conclusions of Law from the Preliminary Injunction hearing.  Further, Ms. Curto was informed that she was "not permitted to contact the Court nor make filings via this email address. All filings must be filed directly with the clerks [sic] office." Jan. 17, 2018 E-mail to Ms. Curto.  Contrary to the instruction not to communicate with the Court by email, Ms. Curto proceeded to do so.  Jan. 17, 2018 Email from Ms. Curto ("I am offended by this ruling and will only reply to the most blatantly offensive sections of the many false assertions . . . Judge Grimm makes no acknowledgement of this egregious and false action by PMI . . . Judge Grimm's assertion that 'I linked Gmail accounts' and denying the basic fact *(which every 12-year old knows)* is that Google links the accounts. *This court has NO understanding* of BASIC Google functions. I am not going to pay legal fees to educate the Court.") (emphasis added).[3]  Ms. Curto also stated in that email that the "Court is hereby informed that I will continue to represent myself pro se because I am unwilling to pay a law firm to correct what this Court already had at its disposal to know as the correct and true."  *Id.*

---

[3] These emails appear as Exhibit 1 to this Memorandum Opinion and Show Cause Order.

Following this email and four others sent within twenty-four hours wherein Ms. Curto attempted to file a response to my Findings of Fact & Conclusions of Law, I issued another Letter Order and stated that my offer to send Ms. Curto courtesy copies of the Court's filings

> was done to allow Ms. Curto to receive court filings on the day they are docketed, with another copy sent by U.S. mail as court procedures require. I informed Ms. Curto that my official rulings would continue to be sent through the U.S. mail as required by this Court's procedures . . . The only appropriate means by which Ms. Curto may communicate with the court is by submitting her filings to the Clerk of the Court via U.S. mail or in person or at a hearing or a telephone conference call ordered by the Court. Any other communications with the Court are improper ex parte communications and will be disregarded without further action.

Jan. 18, 2018 Ltr. Order, ECF No. 28.  I also warned Ms. Curto that should she continue to disregard my Order and respond via email to my chambers, I would discontinue sending her courtesy copies by email.  *Id.*

On January 23, 2018, I held another telephone conference call with the parties and discussed Ms. Curto's Motion to Quash or Modify the Preliminary Injunction and related filings. Jan. 23, 2018 Pre-Mot. Conf., ECF No. 30; ECF No. 31 (consolidating ECF Nos. 14, 19, and 29 into one motion).  During that call, I set a briefing schedule and informed the parties that a discovery order would be issued in furtherance of the Preliminary Injunction.  *Id.*; *see also* Discovery Order, ECF No. 32.  On January 26, 2018, three days after this telephone conference and in violation of the Pre-Motion Order, Ms. Curto filed a Motion for Protective Order, ECF No. 34.  Because Ms. Curto is proceeding *pro se*, I did not immediately strike her motion but instead treated it as a request to file a motion and scheduled a telephone conference.  Jan. 26, 2018 Ltr. Order, ECF No. 35.  However, I did warn her that "[i]f other motions are filed without following the pre-motion conference procedure, they will be stricken."  *Id.*  On February 2, 2018, I held a telephone conference with the parties and, at my request, U.S. Magistrate Judge Timothy J. Sullivan also participated.  Feb. 2, 2018 Ltr. Order, ECF No. 45.  I recommended that the

parties meet with Judge Sullivan to see whether they could mutually agree to a consent order, the entry of which would permit me to withdraw the Preliminary Injunction, which Ms. Curto said was preventing her from finding new employment. *Id.*; Referral Order, ECF No. 40.

On February 21, 2018, with the capable assistance of Judge Sullivan, the parties negotiated a consent order, and I signed it, making it an order of this Court. Sealed Consent Order, ECF No. 57. As part of the agreement, the Preliminary Injunction that had been in place since December 21, 2017 was withdrawn and replaced by the Sealed Consent Order. ECF No. 58. Not one week after entry of the Sealed Consent Order, Paradyme filed a pre-motion letter seeking to enforce it because Paradyme believed Ms. Curto had the intention of violating its terms. ECF No. 60. Ms. Curto responded to Paradyme's request for a telephone conference, despite the provision of the Pre-Motion Order prohibiting such responses. Def.'s Resp. to Pl.'s Ltr. Seeking Enforcement, ECF No. 64; *see also* March 12, 2018 Ltr. Order, ECF No. 66.

On March 9, 2018, I held a telephone conference with the parties, which was recorded, to discuss Paradyme's request to enforce the Sealed Consent Order. March 9, 2018 Pre-Mot. Conf., ECF No. 65; March 12, 2018 Ltr. Order 1. During the call, I set a schedule for the parties to brief Paradyme's requested motion. March 12, 2018 Ltr. Order 1. I also reminded Ms. Curto that I would strike any filing that did not comply with the pre-motion filing requirement, and that responses were not permitted to letters requesting a pre-motion conference unless ordered by the Court. *Id.* I also warned Ms. Curto that the Sealed Consent Order was enforceable until such time as the Court determined it was not and violation of it could result in her being held in contempt. March 9, 2018 Pre-Mot. Conf.

*Refusing to Abide by the Court's Orders to Answer Paradyme's Complaint*

Further problems developed as a result of Ms. Curto's failure to file an answer to Paradyme's Complaint, after she had been served. Specifically, Ms. Curto was served on January 4, 2018, requiring her to answer or otherwise respond by January 25, 2018. *See* Fed. R. Civ. P. 12; Pl.'s Mot. for Entry of Default ¶¶ 7–8. She did not.

During a March 9, 2018 pre-motion telephone conference, Paradyme stated that Ms. Curto had not yet responded and requested that a deadline be set for her to do so. Mar. 9, 2018 Pre-Mot. Conf. Ms. Curto stated that she would file an answer "in a week," which would have been March 16, 2018. *Id.* To ensure that she had sufficient time to do so, the deadline was set for March 23, 2018. *Id.* Ms. Curto did not respond by the Court-ordered deadline. On April 13, 2018, Paradyme filed a Motion for Clerk's Entry of Default.[4] ECF No. 74.

In response, Ms. Curto filed a Motion to Dismiss Entry of Default (again, without complying with the pre-motion filing order), wherein she stated that during the March 29, 2018 pre-motion conference with the Court she understood that her answer was due April 23, 2018. ECF No. 81. As a result of this filing, I issued a Letter Order to clear up Ms. Curto's misunderstanding. That Letter Order pointed out that the telephone conference she referenced actually was held on March 9, 2018 and that the deadline for her to answer Paradyme's Complaint was March 23, 2018. April 25, 2018 Ltr. Order, ECF No. 83. Ms. Curto was afforded one more chance to respond to the Complaint, and I ordered that "she must file her answer (which may include any counterclaims) not later than May 9, 2018. *See* Fed. R. Civ. P. 8. Should Ms. Curto wish to file a motion instead of an answer, she must comply with the pre-

---

[4] As a motion for the Clerk to enter a default is neither a discovery nor substantive motion, but rather a request for an order from the Clerk, no pre-motion letter was required or filed.

motion letter procedure. *See* ECF No. 20." *Id.* at 1–2. This deadline passed and Ms. Curto failed to file an appropriate response. Although she filed two documents, they were not accepted by the Court because one did not contain a signature and the other was a surreply to Paradyme's Motion to Enforce the Sealed Consent Order.[5] ECF No. 85. Of note, neither document contained an answer, counterclaim or a request to file a motion. *See id.*

*Improper Language and Conduct Towards Paradyme and its Counsel*

In her dealings with counsel for Paradyme, Ms. Curto also has failed to conduct herself in a respectful manner, and has continued to do so after being admonished by the Court for her improper conduct. *See, e.g.*, Sealed Consent Order Enforcement Emails 4, ECF No. 60-1 ("Let me invite you to join the 21st century - WTF are "hard copies" ??? I don't have ANY paper in my possession. How can "your" clients, who are apparently IT "experts" even deal with Tydings[6] incompetence with any credibility going forward ?? It's mind boggling to me ???????? You are amateurs - I looked at all of your filings in total disbelief. . . .Are you an idiot or just stupid ? . . . Your filings are a disgrace to your profession.").

In reviewing Paradyme's filings, Ms. Curto's inappropriate conduct was clear and the Court ordered her to cease conducting herself in this manner during the March 9, 2018 pre-motion conference. ECF No. 65; *see also* Mar. 12, 2018 Ltr. Order (memorializing the March 9, 2018 pre-motion conference and stating that "the parties were reminded that the language in their filings must be respectful and courteous"). Additionally, during this call, Ms. Curto was directed to address her communications to counsel for Paradyme, and not to contact its officers or employees directly. *Id.* Ms. Curto failed to comply with this order as well, and her

---

[5] Surreplies are not permitted without permission of the Court. Loc. R. 105.2.a.
[6] "Tydings" is a reference to Tydings and Rosenberg LLP, where Ms. Luse is an attorney.

communications with counsel for Paradyme continued to be disrespectful.  *See* Pl.'s Mem. on Enforcing the Sealed Consent Order 3 n.1, ECF No. 68 ("Ms. Curto's disregard for this Court's orders is also evident by the fact that she continues to contact Paradyme principles [sic] and employees directly and send abusive and disrespectful emails to undersigned counsel, despite what was discussed during the pre-motion call with this Court on March 9, 2018"); Mar. 11, 2018, 8:03 P.M. Email from Ms. Curto to Ms. Luse, ECF No. 68-2 (writing to Paradyme's principal, Eddie O,[7] on March 11, 2018 that he "really need[s] to get competent legal representation when [his] life, livelihood, reputation, and family is on the line. Jaime Luse Walker [sic] is an idiot that will result in life-altering and damaging consequences for [him] and [his] family");  Mar. 22, 2018, 10:46 A.M. Email from Ms. Curto to Ms. Luse, ECF No. 68-2 ("Judge Grimm also pointed out that it is a professional ethics courtesy and I am not a member of the profession, and given the professional assault, personal violations by you, the data and privacy rape by you, the overt lies you have put before the Court, the misuse of the Court by you, I don't believe I owe you or your clients ANY professional courtesy . . . I want to see how after raping my computer, you can now prove that I maliciously and intentionally linked Gmail accounts to STEAL PMI trade secrets . . . ."); Mar. 11, 2018 4:45 P.M Email from Ms. Curto to Ms. Luse, ECF No. 68-2 ("I would consider abiding by ethics if I was engaging with an ethical lawyer but since you feel entitled to violate ethics and provide my emails that state 'confidential for settlement purposes' as documents to give to the Court or the numerous lies you put forward - remember ethics goes both ways.").

---

[7] According to Paradyme's website, Eddie O is the Chief Strategy Officer.  *Leadership*, Paradyme Management, http://www.paradymemanagement.com/our-story/leadership/ (last visited May 18, 2018).

*Federal and Local Rule Violations*

Ms. Curto also has failed to comply with the Court's Local Rules when she has filed documents, and she has failed to comply with the Local Rules requirement in Local Rule 102.1.b.iii that she keep the Court updated on her current address. For example, Ms. Curto has violated Federal Rule of Civil Procedure 11(a) and Local Rule 102.1.b.i by failing to sign documents, *see, e.g.*, ECF No. 85, and by failing to include the required identification information as she did not include her "name, address, telephone number, email and fax number." *See, e.g.*, ECF Nos. 29, 34, 46, 80. Further, nine pieces of correspondence have been returned as undeliverable. ECF Nos. 43, 44, 52 (containing two pieces of correspondence), 59, 75–77, 79. *See also* Apr. 25, 2018 Ltr. Order (reminding Ms. Curto that she must adhere to the Local Rules and that should she continue to violate the Local Rules, it "may result in striking her filings and the imposition of sanctions against her, which may include my entering a default judgment"). Lastly, Ms. Curto has attempted to file a surreply without seeking leave of the Court to do so as required by Local Rule 102.5.a. ECF No. 85.

## Discussion

The Court has the authority to sanction an individual for failing to comply with an order or decree. 18 U.S.C. § 401(3). Moreover, "[t]he case law is well established that district courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F. 3d 943, 955 (4th Cir. 1995). As the Supreme Court noted in *Chambers v. NASCO, Inc.*, district courts are "'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 277 (1821)).

And, if the district courts possess the authority to enforce respect and decorum in their presence, they also have the authority to enforce it with respect to the papers that the parties file in court proceedings, and in their communications with each other relating to the litigation. *See id.*; *Nelson v. Eaves*, 140 F. Supp. 2d 319, 322 (S.D.N.Y. 2001) (dismissing *pro se* plaintiff's complaint with prejudice because he wrote threatening letter to defense counsel); *Cameron v. Lambert*, Civ. 9258(DC), 2008 WL 4823596 (S.D.N.Y. Nov. 7, 2008) (dismissing *pro se* plaintiff's complaint because plaintiff used abusive and threatening language)); *Nasser v. WhitePages, Inc.*, No. 12-CV-97, 2014 WL 1323170, at *6–7 (W.D. Va. Apr. 1, 2014) ("This Court expects all litigants, including *pro se* litigants, to conduct themselves with civility and decorum, both in their filings with the Court and communications with each other, and to litigate in good faith. This Court will not tolerate additional uncivil conduct or filings made with an improper purpose.").

Indeed, for almost two centuries, it has been established that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution . . . . because they are necessary to the exercise of all others" and they enable courts "to preserve [their] own existence and promote the end and object of [their] creation." *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 33–34 (1812); *see Chambers*, 501 U.S. at 43 (1991) (quoting *Hudson*, 11 U.S. (7 Cranch) at 34); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (same), *superseded on other grounds by statute as stated in Morris v. Adams–Millis Corp.*, 758 F.2d 1352, 1357 n.7 (10th Cir. 1985). "This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Undergirding this authority "is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth."

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010). Thus, "[d]ue to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Shaffer Equip. Co.*, 11 F.3d at 461; *see also Chambers*, 501 U.S. at 43; *Strag*, 55 F.3d at 955 (quoting *Chambers*, 501 U.S. at 43).

Therefore, the court has the "inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (quoting *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 263–64 (2007) (quoting *Chambers*, 501 U.S. at 45–46)) (internal quotation marks omitted); *see also Adkins v. Wolever,* 554 F.3d 650, 652 (6th Cir. 2009); *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006); *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 944 (11th Cir. 2005); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517–18 (D. Md. 2010); *In re NTL, Inc. Secs. Litig.,* 244 F.R.D. 179, 191 (S.D.N.Y. 2007); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003). A court's inherent authority to sanction arises when a party "abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Shaffer Equip. Co.*, 11 F.3d at 462. Pursuant to their inherent authority, courts "may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *Id.* at 461–62. They may enforce "the observance of order," such as by imposing fines or prison sentences for contempt or by dismissing a case or entering default judgment. *See Hudson*, 11 U.S. (7 Cranch) at 34; *Shaffer Equip. Co.*, 11 F.3d at 461–62.

However, a Court's inherent authority should be used with discretion and only the most severe sanctions such as dismissal or default judgment should be in response to conduct "characterized as 'contumacious,' 'fraudulent,' or 'bad faith.'" *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 497–98 (D. Md. 2000); *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989); *see also Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1476 (D.C. Cir. 1995) (citing *Ford v. Fogarty Van Lines, Inc.,* 780 F.2d 1582, 1583 (11th Cir. 1986); *Pardee v. Stock,* 712 F.2d 1290, 1292 (8th Cir. 1983); *Titus v. Mercedes Benz,* 695 F.2d 746, 749 (3d Cir. 1982); *Graves v. Kaiser Aluminum & Chem. Co.,* 528 F.2d 1360, 1361 (5th Cir. 1976); *cf. Synanon Church v. United States,* 820 F.2d 421, 423 (D.C. Cir. 1987)); *Diamond v. Bon Secours Hosp.*, No. WMN-09-865, 2010 WL 2696632, at *6 (D. Md. July 6, 2010); *Sadler v. Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D. Md. 1998).

But, even if the Court were to not act upon its inherent authority, many of Ms. Curto's actions, as described above, also may be sanctioned under the Court's authority derived from Federal Rules of Civil Procedure 11 and 16. Rule 11 provides that the Court may sanction a litigant for filing documents "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" or in which "the claims, defenses, and other legal contentions" are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)–(2). Pursuant to Rule 16, the Court is permitted to hold pretrial conferences and to "order the attorneys and any unrepresented parties to appear for one or more pretrial conferences" to "establish[] early and continu[ed] control so that the case will not be protracted because of lack of management" and to "discourag[e] wasteful pretrial activities." Fed. R. Civ. P. 16(a)(2)-(3). Further, if a party fails to appear, is unprepared, or "fails to obey a scheduling or

*other pretrial order*," the Court may impose sanctions to include those authorized by Rule 37(b)(2)(A)(ii)-(vii), and in addition, to ordering a party to pay the reasonable expenses (including attorneys' fees) incurred by the party's noncompliance. Fed. R. Civ. P. 16(f)(1) (emphasis added). Rule 37 permits the Court to strike pleadings, stay proceedings, dismiss actions, and to enter default judgment. *See* Rule 37(b)(2)(A)(ii)-(vii). Therefore, because of Ms. Curto's noncompliance with court orders, sanctions may be permitted, to include the entering of default judgment, under the Federal Rules of Civil Procedure as well as pursuant to the Court's inherent authority.

> In determining whether to enter a default judgment, this Court considers
>
> (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.

*See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–05 (4th Cir. 1977); *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 93 n.13; *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 518 (D. Md. 2000); *Tech. Advancement Grp., Inc. v. IvySkin, LLC*, No. 2:13cv89, 2014 WL 3501060, at *5 (E.D. Va. July 14, 2014) (citing *Mobil Oil Co. de Venez. v. Parada Jimenez*, 989 F.2d 494 (Table), 1993 WL 61863, at *3 (4th Cir. Mar. 9, 1993) (applying the *Wilson* factors and stating that "the extreme sanction of judgment by default is reserved for only cases where the party's noncompliance represents bad faith or a complete disregard for the mandates of procedure and the authority of the trial court.").

*Ms. Curto's Bad Faith Conduct*

Viewed in their totality, Ms. Curto's actions amount to bad faith. First, she agreed to negotiate with Paradyme (with the assistance of Judge Sullivan) to reach an agreement on a

consent order that would result in the lifting of the Preliminary Injunction, and thereby confer a direct benefit on Ms. Curto, by removing an impediment that she had identified to her ability to find new employment.  Yet, a mere six days after the parties entered into their agreement and it was approved by the Court, Paradyme's counsel wrote to the Court requesting that it be enforced.  In the briefing that followed, Ms. Curto argued that she was not bound by the Sealed Consent Order.  Def.'s Resp. to Pl.'s Ltr. Seeking Enforcement 4 (". . . nothing in violation of the false 'Order'"; "The Defendant asserts that the lawsuit, the '[Sealed Consent] Order' is a sham . . . ."; "If it is known that an employee signs covenants not to compete at the commencement of their employment without receiving some additional consideration that covenant is not unenforceable, therefore the entire basis for the existing '[Sealed Consent] Order' is false . . . The '[Sealed Consent] Order' stand[s] without legs or verity of any value."); Disclosure Emails 5 (writing in various emails on February 28, 2016 that "I will be at OIG when the doors open tomorrow am. . . ."; "Your clients are guilty of HubZone Fraud and the documentation will be provided tomorrow"; "Ok – I will not provide the OIG with your clients confidential information. LOL. The burden will be on you to prove I did."); Def.'s Opp'n to Mot. to Enforce, ECF No. 70 (arguing that "Ms. Curto agreed to sign the [Sealed Consent] Order as long as it was noted that she was not agreeing to the terms of the Order which the Defendant believes are illegal and unconstitutional.").  The Court rejected that position in its recent order enforcing the order.  ECF No. 86.  If Ms. Curto participated in the negotiation of the Sealed Consent Order in order to obtain the benefit of lifting the Preliminary Injunction, but without the intention of being bound by it, this is the essence of bad faith.  *See Crowe v. Smith*, 261 F.3d 558, 564–55 (5th Cir. 2001) (holding that false statements and dishonest conduct in settlement negotiations could amount to bad faith); *Fisher v. SmithKline Beecham Corp*, No. 07-347A(F),

2008 WL 4501860, at *5 (W.D.N.Y. Sept. 29, 2008) (awarding sanctions under Rule 16(f) for party's failure to negotiate in good faith).

In addition to lacking an intention to be bound by the agreement, Ms. Curto appears to have lacked candor in some of her filings with the Court. For example, in her "response" to my Findings of Fact and Conclusions of Law, which was filed on January 19, 2018, Ms. Curto stated that she "denies that she has in any manner used any information to contact ANY Federal Agency including the SBA as purported by the Plaintiff." Def.'s Resp. to Findings of Fact 9, ECF No. 29. Ms. Curto also has "assert[ed] that she has not, and will not, release any information while under the TRO. The Defendant further asserts that she done everything put [sic] to comply with the TRO."[8] *Id.* at 10. However, in her Opposition to Paradyme's Motion to Enforce the Consent Order, which was filed on April 2, 2018, Ms. Curto stated that "[t]he truth is that on December 29, 2017, the Defendant spoke with the SBA OIG HOTLINE about the procedures and process for reporting fraud with the Small Business Administration. The Defendant was transparent about the existing injunction and made it known she was only seeking information." Def.'s Opp'n to Mot. to Enforce 2. In another instance, Ms. Curto told Ms. Luse that on her computer "were a few (less than 10) PMI documents . . . ," Dec. 14, 2017 Emails from Ms. Curto to Ms. Luse  10 , ECF No. 6-1, while she later admitted that she retained one hundred, Def.'s Reply to Quash Prelim. Inj. 8, ECF No. 46. Although not completely untruthful, Ms. Curto's filings are "half-truths" that do not accurately depict her actions and appear to have been made in an attempt to deceive the Court. *See In re Weiss*, 111 F.3d 1159, 1172 (4th Cir.

---

[8] This paper was filed on January 19, 2018, and the fact that Ms. Curto states she has complied with the Court's order to provide her personal laptop to Paradyme's forensic consultant, is taken by the Court to mean that she would comply with the Preliminary Injunction that was in place, rather than the TRO, which no longer was in effect because of the entry of the Preliminary Injunction on December 21, 2017.

1997) (holding that "deceptions, half-truths, and misrepresentations" were sanctionable offenses) (citing *Chambers*, 501 U.S. at 51); *see also Six v. Generations Fed. Credit Union*, — F.3d —, 2018 WL 2435430, at *1 (4th Cir. May 31, 2018) ("[T]he district court did not abuse its discretion in determining that the sanctioned attorneys' behavior below, *which was designed to and in fact did mislead the district court and this court* and thereby extend the proceedings, should not be countenanced.") (emphasis added).

Equally concerning is Ms. Curto's continuing failure to obey the Court's orders, the Federal Rules of Civil Procedure, and the Local Rules of the Court. She has disobeyed multiple orders to answer the Complaint, as well as the order that she use respectful language when communicating with counsel for Paradyme. She has disregarded the Court's order that she refrain from contacting Paradyme's principles and employees directly, and not to file motions without first requesting permission to do so according to the Pre-Motion Order. Failure to obey court orders, especially repetitively, amounts to bad faith. *Mut. Fed. Sav. & Loan Assoc.*, 872 F.2d at 92; *Laios v. MTM Builder/Developer Inc.*, No. GJH-13-2953, 2014 WL 6066017, at *3 (D. Md. Nov. 12, 2014) (citing *Kilborn v. Bakhir,* 70 F. App'x 692, 693 (4th Cir. 2003) ("[A] party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."); *Poole ex rel. Elliott* 192 F.R.D. at 506 ("In cases of bad faith, courts have ordinarily found direct (and often repeated) violation of court orders."). Further, she has filed papers without her signature and other contact information required by the Federal and Local Rules. Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number."); Loc. R. 102.1.a.ii, b ("When a party is appearing without counsel, the Clerk will

accept for filing only documents signed by that party."; "At the bottom of all court documents, counsel and self-represented litigants shall state their name, address, telephone number, email and fax number."). The failure to include a signature and the other information required by Federal Rule 11 is particularly troublesome given the lack of candor in some of Ms. Curto's filings, and the language of Rule 11(b) clarifies the significance of the signature requirement in Rule 11(a):

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . .

Fed. R. Civ. P. 11(b). While I am mindful that Ms. Curto is proceeding without counsel (despite the court's encouragement that she retain counsel, and her apparent ability to do so, given the many references she has made to meeting with counsel to pursue claims against Paradyme), this does not absolve her from complying with the rules of procedure, local rules, and court orders. *See Sanders v. Delta Air Lines, Inc*., No. 13-1440-TUC-CKJ, 2014 WL 2859135, at *3 (D. Ariz. June 23, 2014) (noting that, "[a]lthough a pro se litigant may be entitled to great leeway by the Court when construing their filings, . . . it does not excuse him from following basic rules of ethics and civility" and ordering plaintiff "to act in a civil manner at all times with regards to the proceedings moving forward."); *Holsey v. Kerner*, 404 U.S. 519, 520 (1972) (holding that pro se litigants still "must adhere to the rudimentary dictates of civil procedure.") (citing *inter alia, Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)); *Dancy v. Univ. of N.C. at Charlotte*, No. 3:08-CV-166-RJC-DCK, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009) ("Although *pro se* litigants are given liberal treatment by courts, even *pro se* litigants are expected to comply with time requirements and other procedural rules.").

Taken collectively, Ms. Curto's conduct has made the proceedings in this case longer, more burdensome, and has interfered with the ability to comply with the requirement of the Federal Rules of Civil Procedure that the parties and the Court must employ the rules of procedure to secure "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

*Prejudice to Paradyme*

Ms. Curto's conduct has resulted in prejudice to Paradyme.[9]  Most significantly, Ms. Curto's actions led directly to Paradyme's voluntary withdrawal of the Preliminary Injunction against her because it believed that the Sealed Consent Order was binding and would protect its interests in a manner consistent with the Preliminary Injunction, and that Ms. Curto had negotiated it in good faith.  Ms. Curto's disavowal of the Sealed Consent Order required Paradyme to request authority to file a motion to enforce it.  The Court ruled that the Sealed Consent Order was enforceable (although noting that it did not prevent Ms. Curto from filing a *qui tam* action in good faith against Paradyme), ECF No. 86 at 2, and there is no doubt that

---

[9] At the outset of this case, I noted one way Paradyme had been prejudiced by Ms. Curto's conduct.  At the preliminary injunction hearing, I found that

> given the nature of the e-mails that have been sent by the Defendant to Mr. Gandhi and to Ms. Luse, the threatening tone, the tone referencing pending bids, the communications suggesting that there are Small Business Administration certification deficiencies with the HUBZone, certification of the Defendant, and threatening action, such as a Qui Tam action or other litigation, is such that to have delayed this hearing until such time that the Plaintiffs could have [e]ffected personal service, given her reluctance to provide information that might show where she could be served or located or an attorney could be reached, and the giving of a post office box rather than a residence on her driver's license, supports the conclusion that Ms. Curto is avoiding service and trying to posture herself for being able to show that she did not have sufficient notice.

Hr'g Tr. 6:24–7:13, ECF No. 27.

having to resort to the Court to confirm the enforceability of the consent order was a burden and not inconsiderable expense to Paradyme.

Paradyme also has been prejudiced because its case seeks to prove that Ms. Curto has violated the terms of the parties' Employment Agreement and that she confiscated and still retains its confidential information.  Should this be correct, Paradyme's confidential information is currently in the hands of an individual who is not permitted to retain it and has consistently threatened to use it to harm her former employer, thereby making a speedy resolution of this case—a goal Ms. Curto is thwarting—proper and important.  Finding of Fact & Conclusions of Law 4, 8–9.  Further, Ms. Curto has delayed the orderly progress of this case on the merits by repeatedly failing to file an appropriate answer or other response to the Complaint, resulting in Paradyme's seeking a Clerk's Entry of Default.  ECF Nos. 74, 84.

Lastly, Paradyme has suffered prejudice due to the amount of resources it undoubtedly has had to expend at virtually every phase of this case—from serving Ms. Curto, litigating the motions for injunctive relief, negotiating the Sealed Consent Order, moving to enforce that order, and having the issues addressed on the merits by the filing of an answer, that would permit discovery to proceed, due to Ms. Curto's conduct.

*Deterring Non-Compliance*

The Fourth Circuit has repeatedly found that actions like Ms. Curto's that amount to "'stalling and ignoring the direct orders of the court with impunity' [are] 'misconduct' that 'must obviously be deterred.'"  *Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 303 (4th Cir. 2011) (quoting *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 93).

Further, Ms. Curto's lack of candor with the Court and Paradyme should be deterred.  *See Six*, 2018 WL 2435430, at \*10 (holding that lack of candor warranted sanctions).  Similarly, the Court must deter rude, disrespectful, insulting, and threatening conduct by one party in its dealing with an opposing party and its counsel.

*Effectiveness of Less Drastic Sanctions*

Absent a showing by Ms. Curto that she has the ability (and willingness) to correct the misconduct that has been described above, and proceed in this case in compliance with the rules of procedure, local rules, and court orders, I am left with the inescapable conclusion that lesser sanctions than the entry of a default judgment against her would be ineffective.  Ms. Curto has refused to file an answer, so striking counterclaims or affirmative defenses is not available. While monetary sanction, in theory, might be of some value, in reality it is doubtful that they would address all of the conduct described above.  Ms. Curto has been warned on numerous occasions that her conduct could lead to her being held in contempt; however, these warnings seem to have had little effect on her.  By her own admission, it appears that she has disclosed information prohibited by the TRO, Preliminary Injunction, and Sealed Consent Order.  Curto & Luse Jan. 24–Mar. 14, 2018 Emails 1, ECF No. 72-1 (informing Ms. Luse on January 24, 2018 that Ms. Curto "completed a verbal intake with the HubZone OIG office regarding Paradyme" and that she had "a meeting with State OIG tomorrow [on January 25, 2018] and COTR for the State Department contract has been identified"; informing Ms. Luse on March 13, 2018 that Ms. Curto "ha[d] commenced an OIG investigation into PMIs fraud against the US Government" and "the OIG asked that [she] provide them with \* The Federal employee responsible for contract or grant oversight or management REDACTED"); Def. Ltr. to Dismiss Default 3, ECF No. 81 ("Without providing any documents, the Defendant has provided information of this lawsuit to:

21

Inspector General of the Department of Commerce, Inspector General of the US State Department, Inspector General of the SBA, Inspector General of the Department of the Army, Inspector General of the Department of Defense, Inspector General of HMS (CMA) and the Inspector General of GSA."); *see also* Mar. 11, 2018, 8:03 P.M. Email from Ms. Curto to Ms. Luse, ECF No. 68-2 ("Judge Grimm was mistaken about the enforceability of the Injunction – it will NOT affect the Qui Tam because your clients have no defense").  Further, she has continued to communicate with counsel for Paradyme in language that is disrespectful and demeaning, and to contact Paradyme's principals and employees directly after having been ordered not to do so. Mar. 9, 2018 Pre-Mot. Conf.; March 12, 2018 Ltr. Order ("Additionally, the parties were reminded that the language in their filings must be respectful and courteous . . .  Further, communications in this matter between the parties should only be between Ms. Curto and Paradyme's counsel, Jamie Walker Luse.  Although she is not bound by the code of ethics as it pertains to counsel, Ms. Curto should refrain from contacting Paradyme's principles [sic] and employees directly."); Mar. 22, 2018, 10:46A.M. Email from Ms. Curto to Ms. Luse, ECF No. 68-2 ("Judge Grimm also pointed out that it is a professional ethics courtesy and I am not a member of the profession, and given the professional assault, personal violations by you, the data and privacy rape by you, the overt lies you have put before the Court, the misuse of the Court by you, I don't believe I owe you or your clients ANY professional courtesy. . . . I want to see how after raping my computer, you can now prove that I maliciously and intentionally linked Gmail accounts to STEAL PMI trade secrets . . . ."); Mar. 11, 2018, 8:03 P.M. Email from Ms. Curto to Ms. Luse ECF No. 68-2 ("Eddie - you really need to get competent legal representation when your life, livelihood, reputation, and family is on the line. Jaime Luse Walker [sic] is an idiot that will result in life-altering and damaging consequences for you and your family. Do you even

understand her gobbly gook analysis of what is going on to your company and profession?"); Mar. 11, 2018, 4:45 P.M. Email from Ms. Curto to Ms. Luse, ECF No. 68-2 ("The 'ethics' conversation from Judge Grimm does not apply to me because I did not take the oath and I am not a part of your profession. I would consider abiding by ethics if I was engaging with an ethical lawyer but since you feel entitled to violate ethics and provide my emails that state 'confidential for settlement purposes' as documents to give to the Court or the numerous lies you put forward - remember ethics goes both ways. . . ."). Ms. Curto's repetitive disobedient conduct in the face of numerous warnings and orders that she may be sanctioned or held in contempt, *see, e.g.*, Mar. 9, 2018 Pre-Mot. Conf.; Apr. 25, 2018 Ltr. Order, demonstrate that a more lenient sanction than the entry of a default judgment against her may not deter her inappropriate conduct.  Therefore, I find that unless she can show cause why this sanction should not be imposed, I will impose a default judgment against her.  Should she undertake to show cause why this sanction should not be imposed, Ms. Curto must convincingly demonstrate that she is willing and able to comply with the rules of procedure, local rules and orders of this Court, and that she will discontinue the disrespectful and rude tone of her communications with Paradyme's counsel in her filings in this Court.

## ORDER

Accordingly, it is this 11th day of June 2018, by the United States District Court for the District of Maryland, hereby ORDERED that, by June 25, 2018, Defendant Mary Ellen Curto will SHOW CAUSE why she should not be sanctioned by the Court, including, if appropriate the entry of a default judgment, holding her in contempt, or imposing a monetary sanction.  Should Plaintiff wish to file an Opposition to Defendant's Show Cause filing, it should do so by July 9, 2018.  Defendant will be permitted to reply by July 23, 2018.

Based on the foregoing, Plaintiff's Motions for Clerk's Entry of Default, ECF Nos. 74 and 84, ARE DENIED without prejudice.

Dated: June 11, 2018                                     /S/
                                                    Paul W.  Grimm
                                                    United States District Judge