**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| PARADYME MANAGEMENT, INC., | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:17-cv-03687-PWG |
| MARY ELLEN CURTO, | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Paradyme Management, Inc. ("Paradyme") brought this suit nearly 10 months ago, seeking to hold a former employee, Mary Ellen Curto ("Curto"), liable for breach of contract and violation of various state and federal laws. Compl., ECF No. 1. The Court will now address two of the many issues that have arisen in the course of the case. The first issue is whether the Court should sanction the defendant, Ms. Curto, or enter a default judgment against her as a consequence of her conduct in this suit. *See* June 2018 Mem. & Order, ECF No. 87. The second issue is whether to unseal all remaining sealed documents in the case. *See* August 2018 Letter Order, ECF No. 93. The parties have fully briefed both issues, *see* ECF Nos. 89, 94-95, and no hearing is required, *see* Loc. R. 105.6.

I.

I begin with the matter of Ms. Curto's conduct. On June 11, 2018, this Court ordered Ms. Curto to show cause why she should not be sanctioned, with potential consequences including entry of a default judgment, a contempt order, or the imposition of a monetary sanction. June

2018 Mem. & Order 23. The Court's memorandum opinion detailed many examples of Ms. Curto's discourteous and disruptive actions over the course of this case, including her repeated failure to comply with court orders; her apparent disregard for a consent order she agreed to enter into; her violation of the Court's Local Rules; her use of inappropriate language; and her abuse of the Court's willingness, as a courtesy to Ms. Curto, to send her electronic copies of any filings made by the Court on the day they were entered on the docket, in addition to sending her copies by mail, as required by Court procedures. *See id.* at 1-10.

Ms. Curto's June 22 response to the Court's show cause order mostly seeks to deflect the Court's attention onto Paradyme, reprising a long list of allegations Ms. Curto has previously aired in numerous other filings. *See, e.g.*, Resp. to Show Cause 16, ECF No. 89 ("The Court cautions the Defendant for unethical professional behavior, but does not consider the ethics of the Plaintiff bringing forth a false law suit with the sole intention to prevent the reporting of fraud against the United States Government."). In a response that runs 18 pages, plus 62 pages' worth of exhibits, Ms. Curto expresses no contrition and offers few excuses for the actions this Court cited. The most she allows is that her "tone may be reflective of her intense disdain for [the] bullying and overt fraud" she feels she has encountered in connection with Paradyme's "cruel, toxic, and unlawful work environment." *Id.* at 2. Beyond that, Ms. Curto asserts she lacked adequate notice for the Court's December 14, 2017, telephone conference call; was not properly served with process; and never received various court papers because they were improperly addressed. *See id.* at 12-15. Ms. Curto adds that she has tried to follow court procedures and "wishes that [the] Clerk had asked for [her] signature when the documents were hand-delivered and accepted at the Clerk's window." *Id.* at 16.

I can see nothing in Ms. Curto's response to the show cause order to justify her consistent disregard for this Court's rules and procedures. While she seeks to justify her misconduct by blaming Paradyme for filing suit to enforce the non-disclosure covenant in her employment contract, it is her own conduct in repeatedly refusing to file an answer or motion to dismiss that has delayed the progress of this case to a point where the merits of the complaint could be resolved.[1] Nor has she filed a counterclaim, as the Rules of Procedure would allow her to do, to assert any claims that she may have against her former employer. In short, while Ms. Curto continues to bemoan what she perceives as an unmeritorious lawsuit, she herself has prolonged the litigation by repeatedly refusing to comply with Court orders instructing her to respond to the Complaint in a manner allowed by the Federal Rules of Civil Procedure.

And, while she continues to be aggrieved by the Court's ruling that the Consent Order she entered into is enforceable, *see* Def.'s Resp. to Pl.'s Ltr. Seeking Enforcement 4, ECF No. 64, she conveniently overlooks the fact that the enforcement order only did so to the extent that it did *not* prevent her from filing good faith false claims complaints against the Plaintiff.[2] Simply

---

[1] *See, e.g.*, March 12, 2018 Letter Order, ECF No. 66 (directing Ms. Curto to file an answer to Paradyme's complaint (including, if appropriate, any counterclaims) on or before March 23, 2018, or, if she intended to file a preliminary motion, to comply with the Court's pre-motion conference procedure, ECF No. 20, dated January 3, 2018); April 25, 2018 Letter Order, ECF No. 83 (noting Ms. Curto's failure to file an answer/counterclaim or a pre-motion conference request and giving her until May 9, 2018, in which to do so).

[2] The final paragraph of the Court's Order of May 24, 2018, ECF No. 86, clearly states that the Consent Order that Ms. Curto entered into with Paradyme (with the assistance of Magistrate Judge Timothy Sullivan)—which incorporated the terms of the non-disclosure provisions of her employment contract—was only enforceable to the extent it did not prohibit her from reporting in good faith any illegal activity by Paradyme to the Government or from disclosing to the Government information otherwise within the scope of the non disclosure agreement for that limited purpose. *See* May 24, 2018 Mem. Op. & Order 15, ECF No. 86; *see also* March 12, 2018 Letter Order (advising Ms. Curto that the Consent Order she entered into with Paradyme did not prevent her from communicating with the Government about any whistleblower action or Qui Tam complaint).

put, the fastest way for Ms. Curto to obtain the resolution she seeks is to comply with the Rules of Procedure and Court orders that will enable her to respond to the suit in the proper manner.

While I believe her conduct to this point provides ample grounds for, at a minimum, a contempt order, I will not issue such an order at this time. Instead, I will allow Ms. Curto a final opportunity to purge herself of her prior contempt by curbing her disrespectful conduct and complying with the Federal Rules of Civil Procedure and orders of this Court.

Paradyme has repeatedly urged this Court to enter a default against Ms. Curto for having failed to properly respond to the Complaint in accordance with Federal Rules of Civil Procedure 8 and 12. *See* Mot. for Entry of Default, ECF No. 74; Second Mot. for Entry of Default, ECF No. 84. I have previously refused its entreaties. *See* June 2018 Mem. & Order 24. Let there be no mistake, though: Ms. Curto must file an answer (which may include a counterclaim, if there is a good-faith basis for one) or motion to dismiss in compliance with the pre-motion conference procedure set out at ECF No. 20 and the Federal Rules, and this will be her last chance to do so. The answer or pre-motion request will be due on or before November 6, 2018. No extensions will be provided. Should she fail to file a timely response, she may be subject to appropriate relief, including an entry of default. I am enclosing a copy of the Federal Rules for her reference and direct her attention to the rules that are most applicable for her purposes, which are Rules 8 and 10 through 13.

## II.

I turn now to a different matter the parties have fully briefed, which is whether to unseal the 14 documents that remain sealed in this case. *See* ECF Nos. 47, 60, 64, 67, 68, 70-73, 80, 81, 87, 89 & 90. I informed the parties in my letter order of August 20, 2018, that I was inclined to unseal these documents. *See* August 20, 2018 Letter Order, ECF No. 93. Paradyme has agreed

it would be proper to unseal these records. *See* Paradyme Unsealing Letter, ECF No. 94. Ms. Curto's responsive brief is decidedly less clear but appears to take the contrary position. *See* Curto Unsealing Letter, ECF No. 95. There, Ms. Curto intimates that her January 26, 2018, request for a protective order, ECF No. 34, justified the sealing of documents that may disclose her role in an unrelated qui tam action. *See* Curto Unsealing Letter 1.

There can be no doubt that the public enjoys a "qualified right of access to judicial documents and records" filed in civil cases. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). This right, which emanates both from the common law and from the First Amendment, serves two aims. First, it gives members of the public the opportunity to "oversee and monitor the workings of the Judicial Branch." *Id.* Second, "public access to the courts promotes the institutional integrity of the Judicial Branch." *Id.*

It is important to distinguish between the two independent sources from which the right of access derives, because they differ in two key ways. First, they are not coextensive. "While the common law presumption in favor of access attaches to *all* 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)) (emphasis added). That is to say, there may be times when the common law presumption applies to a record, but the First Amendment guarantee of access does not.

Second, to the extent both sources of access rights do apply to the same set of documents, they are not equal in strength. The common law is the weaker of the two, in that it merely creates a rebuttable presumption of access. To overcome the presumption, the party seeking to seal the records must show that "countervailing interests heavily outweigh the public interests in

access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The First Amendment, when applicable, is more rigorous. Under the First Amendment, access to covered court records "may be denied only on the basis of a compelling government interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180.

Whether the First Amendment right of access covers the sealed documents in this case is not entirely clear. While nearly all courts recognize a First Amendment presumption of access to criminal trials, the contours of the public's right to access records in civil cases is less well defined. *See* David S. Ardia, Court Transparency and the First Amendment, 38 Cardozo L. Rev. 835, 919 (2017). In this circuit, the case law leaves no doubt that the First Amendment right of access applies to "documents filed in connection with a summary judgment motion." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 578-79 (4th Cir. 2004). The Fourth Circuit has declined to say, though, whether the same right covers records relating to a pretrial hearing on a non-dispositive motion or to documents submitted in connection with pretrial discovery matters. *See id.* at 580 (stating the appellate court was "not at all convinced" the district court was correct in applying the First Amendment to a series of exhibits enclosed with briefs concerning pretrial discovery matters and a request to life protective orders).

I do not need to reach the question here, though, because I conclude Ms. Curto has not satisfied the less-demanding burden of rebutting the common law presumption of access. The bulk of the documents currently under seal contain no sensitive information whatsoever. While a few of Ms. Curto's filings make glancing references to the existence of an unrelated qui tam case, *see, e.g.*, February 1, 2018 Letter 1, ECF No. 47 (noting, without further detail, that Ms. Curto has "10 gigs" of sensitive data); Def. Resp. to Mot. to Enforce 1-2, ECF No. 70 (accusing Paradyme of compromising "sealed documents" relating to "an active False Claims case

regarding a separate business entity," without describing the contents of the documents or details about the suit), her suggestion that unsealing these documents might compromise protected information is unfounded. These documents do little more than allude to the existence of sensitive information on Ms. Curto's personal computer. The information itself remains undisclosed.

Of course, I recognize the need to tread delicately when it comes to qui tam actions. The state has a compelling interest in ensuring the premature disclosure of a relator's allegations does not compromise ensuing law enforcement investigations of a fraud against the government. *See Am. Civil Liberties Union v. Holder*, 652 F. Supp. 2d 663-64 (E.D. Va. 2009), *aff'd*, 673 F.3d 245 (4th Cir. 2011). It is for this reason that Congress has elected to require qui tam complaints to be placed under seal for 60 days and to allow the United States to seek an extension of that time "for good cause shown." 31 U.S.C. § 3730(b). The Fourth Circuit has explained that these provisions serve four goals:

> (1) to permit the United States to determine whether it already was investigating the fraud allegations (either criminally or civilly); (2) to permit the United States to investigate the allegations to decide whether to intervene; (3) to prevent an alleged fraudster from being tipped off about an investigation; and (4) to protect the reputation of a defendant in that the defendant is named in a fraud action brought in the name of the United States, but the United States has not yet decided whether to intervene.

*Am. Civil Liberties Union*, 673 F.3d at 249-50 (citing S. Rep. No. 99-345, at 24-25 (1986)).

None of these four rationales is applicable here. I see no information in the records in this case that might conceivably jeopardize a government investigation. There being no "countervailing interests" heavy enough to outweigh the public's right of access, *Rushford*, 846 F.2d at 253, all documents remaining under seal in this case (ECF Nos. 47, 60, 64, 67, 68, 70-73, 80, 81, 87, 89 & 90) are hereby unsealed.

III.

This case has stalled long enough.  Ms. Curto must now respond to Plaintiff's December 13, 2017 Complaint in a manner that complies with this Memorandum Opinion and the Federal Rules of Civil Procedure.  The case will proceed, with all remaining sealed records having now been unsealed.

A separate order will follow.


Date:  October 16, 2018 _____/S/_____
Paul W. Grimm
United States District Judge