IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

PARADYME MANAGEMENT, INC.,     *

    Plaintiff,     *

v.     *     Case No.: 8:17-cv-03687-PWG

MARY ELLEN CURTO,
    *
    Defendant.
    *

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case, though still in its early stages, has had a tortuous history. It began in December 2017, when Paradyme Management, Inc. ("Paradyme"), a Washington, D.C.-based consulting firm, filed a complaint against its former director of corporate operations, Mary Ellen Curto, accusing her of improperly accessing and retaining confidential work documents. Compl., ECF No. 1. What followed, after I granted Paradyme's motion for a preliminary injunction, *see* ECF No. 9, was a series of spats and other digressions that delayed the resolution of this case by more than a year.

Last fall, in an attempt to steer these proceedings back onto course, I ordered Ms. Curto to file her long-overdue answer to Paradyme's Complaint or, alternatively, a motion to dismiss the case. *See* ECF Nos. 97, 98. Ms. Curto, who is representing herself in this suit, did neither. She did, however, explain that she had intended for a document she filed in January 2018 – a document misleadingly titled "Motion to Dismiss Temporary Restraining Order" – to constitute "her response to [Paradyme's] original filing." ECF No. 99. Noting that I had not previously had

1

occasion to rule on that motion, as it had previously been withdrawn as moot, I announced that I would construe it as a motion to dismiss the Complaint and directed the parties to submit further briefing on the motion. *See* ECF No. 101.

Here, with this Memorandum Opinion and Order, I concern myself only with Ms. Curto's motion and the memoranda of law the parties have filed in support of or opposition to it. Upon review, I conclude that Ms. Curto is not entitled to a dismissal at this stage of the proceedings. Her motion is denied, and the case will proceed.

## FACTUAL BACKGROUND

Ms. Curto's motion, as construed in this Court's November 20, 2018 letter order, challenges the sufficiency of Paradyme's Complaint. *See* ECF No. 101. Before proceeding to consider her arguments, it is appropriate to recount the allegations Paradyme has raised in that pleading. I stress that, at this stage of the proceedings, I must take those allegations as true. *See McCready v. Blue Shield of Va.*, 649 F.2d 228, 230 (4th Cir. 1981).

Paradyme traces this dispute to the moment in June 2017 when it offered to hire Ms. Curto as its director of corporate operations. Compl. ¶ 9. The offer letter, noting that Ms. Curto would have access to "highly confidential and sensitive" information, required her, as a condition of employment, to sign an "Employee Non-Dislosure, Non-Compete, and Non-Solicitation Agreement" (the "Agreement"). *Id.* Ms. Curto both accepted the offer and signed the Agreement on June 20, 2017. *See id.* ¶ 10.

The Agreement contained at least four provisions of relevance to this case. The first of these was a nondisclosure provision, which bound Ms. Curto to refrain from

> us[ing] for [her] own benefit or for the benefit of others, or disclos[ing] or divulg[ing] to others, in any manner whatsoever, any Proprietary and/or Confidential Information, except as expressly authorized by [Paradyme] in the course of [her] employment with

> [Paradyme], and except as may be required by law or legal process as provided hereafter.

*Id.* ¶ 19.

A second provision similarly sought to shield Paradyme documents from broader dissemination. That provision stated:

> All Work Product shall be and remain the sole property of [Paradyme] or its Client (as agreed upon between [Paradyme] and its Client, hereinafter "Owner") and, without the written consent of Owner, shall not be copied or reproduced or removed from the premises of Owner, except as required in connection with the performance of [Ms. Curto's] work for [Paradyme].

*Id.* ¶ 20.

A third provision required Ms. Curto, upon termination, to return "all materials that contain, refer or relate to Work Product, Intellectual Property, and Proprietary and/or Confidential Information (whether in written, tangible, electronic or any other form." *Id.* ¶ 21. The provision explicitly barred her from retaining originals or copies of any such documents. *See id.*

The fourth and final pertinent provision entitled the company to seek injunctive relief should Ms. Curto breach the Agreement.

Ms. Curto started working for Paradyme on July 10, 2017. *See id.* ¶ 11. As director of corporate operations, she had access to all electronic files the company stored in the "Corporate Support" folder on Google Drive, a cloud computing service allowing account holders to share files. *See id.* ¶¶ 12-16. This folder held a wide range of documents, including finance and accounting forms, contracts, internal Paradyme communications, request for proposal ("RFP") responses, and administrative forms. *See id.* ¶ 17. Some of these documents, the Complaint asserts, contained "extremely sensitive proprietary, confidential, and trade secret information." *Id.* ¶ 18.

Ms. Curto's tenure at Paradyme lasted less than half a year. On December 4, 2017, the company fired her for what it has characterized as "performance issues." *Id.* ¶ 23. The Complaint asserts that during the termination meeting, Ms. Curto "confirmed that she did not have any Company documents and they remained on Paradyme's Google Drive." *Id.* ¶ 24.

Paradyme later discovered that, prior to her termination, Ms. Curto had linked two non-Paradyme email accounts to the company's Google Drive network in violation of company policy. *See id.* ¶¶ 15, 25, 29. One email address was linked to the IECA Foundation, an organization with which Ms. Curto was affiliated before joining Paradyme. *See id.* ¶ 25; Mot. to Dismiss ¶ 31, ECF No. 19. The other address was Ms. Curto's personal Gmail address. *See id.* ¶ 29. The Complaint alleges that by linking these two addresses to the network, Ms. Curto enabled herself to download company documents to her personal computer or other devices and, conceivably, to continue accessing Google Drive documents after her termination. *See id.* ¶ 30-31.

The Complaint does not allege that Ms. Curto abused her access to Google Drive in either of those two ways. It does assert, though, that Ms. Curto used her Paradyme email address to forward company documents and folders to the IECA email account. *See id.* ¶ 28.

Count I of Paradyme's Complaint in this suit seeks an injunction enforcing the terms of the Agreement. *See id.* ¶¶ 40-48. The remaining counts assert claims for breach of contract (Count II), violation of the Maryland Uniform Trade Secrets Act and the federal Defend Trade Secrets Act (Counts III and IV, respectively), violation of the Computer Fraud and Abuse Act (Count V), conversion (Count VI), and trespass to chattels (Count VII).

As noted above, I am construing ECF No. 19 as a motion to dismiss the Complaint.[1] The parties have fully briefed the motion. *See* ECF Nos. 102, 104. No hearing is required. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes parties in a civil action to seek the dismissal of a claim or complaint on the grounds that it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 647-48, (D. Md. 2015). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] I informed the parties that I would be construing ECF No. 19 in this way after Ms. Curto indicated, in response to a show cause order, that she had intended that document to serve as her "response" to Paradyme's Complaint. ECF No. 99. The document, which Ms. Curto had titled "Motion to Dismiss Temporary Restraining Order," was then 11 months old. Ms. Curto had filed it on January 2, 2018, less than two weeks after I granted Paradyme's Motion for a Preliminary Injunction. *See* ECF No. 9. The parties and I had discussed the document, among other filings, during a January 23, 2018 telephone conference call, during which I stated that I would treat ECF No. 19 and two other filings collectively as a motion to quash or modify the preliminary injunction. *See* ECF No. 31. The motion to quash or modify became moot, though, after I signed a consent order dissolving the preliminary injunction on February 21, 2018. Consequently, the motion was withdrawn, and I had not had occasion to rule on it until now.

## DISCUSSION

To repeat, the purpose of this Memorandum Opinion and Order is narrow. Although Ms. Curto has filed legion motions, affidavits, and exhibits in the nearly 17 months since this suit commenced, I presently concern myself only with her motion to dismiss the Complaint. ECF No. 19. I have informed the parties that in reviewing the motion, I will consult no documents other than Paradyme's Complaint, Ms. Curto's motion to dismiss, Paradyme's response in opposition to the motion, and Ms. Curto's reply. *See* ECF No. 101.

### A.

As I have elsewhere noted, nondisclosure and confidentiality provisions are generally enforceable under Maryland law. *See* January 2018 Findings of Fact and Conclusions of Law 14, ECF No. 26 (citing *MCS Servs. Inc. v. Jones*, WMN-10-1042, 2010 WL 3895380, at *5 (D. Md. Oct. 1, 2010)). Ms. Curto, though, argues in her motion that the nondisclosure agreement she signed upon joining the company "is null and void entirely due to Paradyme's carelessness and benign neglect and mismanagement of what the Plaintiff perceives to be proprietary documentation." Mot. to Dismiss 1.

A "Statement of Facts" enclosed along with the motion expands on her rationale. There, Ms. Curto asserts that the documents to which she had access "were not proprietary and were not trade secrets and are not confidential information." *Id.* at 3. She suggests, though not especially clearly, that any truly sensitive information the company might have retained was stored not on Google Drive but "on secure file servers with significant security walls and protections that the Defendant has no access to." *Id.* at 4. And anyway, she says, even if the Google Drive files were proprietary or confidential, the company had not invested in a secure file-management system and had not taken "any reasonable steps" to keep its information confidential. *Id.* To that end, she

notes, other Paradyme employees who did not have to sign nondisclosure agreements, including interns and temporary workers, had access to many of the same documents, as did outside consultants. *See id.* at 4-6.

Whether Ms Curto's assertions, if true, would render the Agreement unenforceable is a question for another day. At this stage of the proceedings, the issue before me is simply whether the allegations in Paradyme's Complaint, taken as true, are sufficient to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, I am "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). Ms. Curto's argument that the Agreement is unenforceable rests on factual assertions that cannot be found in Paradyme's Complaint and that, accordingly, cannot factor into my review of the Complaint's sufficiency under Rule 12(b)(6). *See In re GNC Corp.*, 789 F.3d 505, 517 (4th Cir. 2015) (noting that factual disputes are "not susceptible to resolution at the motion-to-dismiss stage").

Ms. Curto's motion does not otherwise point to any allegations in the Complaint – or, for that matter, any omissions of essential facts – that preclude a reasonable inference that the Agreement was enforceable. At best, the motion presents factual disputes that would be more appropriately aired in a motion for summary judgment or at trial. I conclude, accordingly, that her argument about the Agreement's enforceability does not justify a dismissal at this juncture.

**B.**

The Motion to Dismiss makes no other legal arguments – at least, not explicitly. It does, however, allege that the documents to which Ms. Curto had access did not, in fact, contain trade

secrets. While this, too, presents a factual dispute, it is possible to interpret her motion as arguing that Paradyme failed to support its claims under the Maryland Uniform Trade Secrets Act ("MUTSA") and the federal Defend Trade Secrets Act ("DTSA").

These two statutes are distinct. Among the ways in which they overlap, though, is that to bring a claim under either statute, a plaintiff must allege the existence of a trade secret. *See Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018) (stating that a plaintiff asserting a DTSA claim "must allege: (1) it owns a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce"); *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 461 (Md. 2004) (observing that a MUTSA claim "raises two central inquiries: (1) whether the information at issue qualifies as a trade secret; and (2) whether an individual has actually misappropriated that information or has threatened to misappropriate it").

MUTSA defines as a trade secret as

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code Ann., Com. Law § 11-1201(e). Put another way, information is a trade secret under MUTSA only if (1) it holds independent economic value because it is not generally known to, or readily ascertainable by, others who stand to benefit economically from its use or disclosure, and (2) reasonable efforts have been made to maintain its secrecy. *See LeJeune*, 849 A.2d at 462.

MUTSA's federal counterpart, the DTSA, provides a similar definition. It states:

8

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

Ms. Curto's motion asserts, as a general matter, that documents to which she was given access "were not trade secrets." Mot. to Dismiss 3. She suggests that the information contained in those documents was unrelated to the company's IT work. *See id.* at 4. She also accuses Paradyme of trying to pass off its client list as a trade secret. *See id.* at 6. Ms. Curto, noting that Paradyme is a federal contractor, rejects this characterization. *See id.* at 6-7.

As before, the only facts bearing on my analysis under Rule 12(b)(6) are the ones Paradyme pleaded in its Complaint. Looking solely to this document, I observe that Paradyme listed 11 varieties of documents the company stored in its "Corporate Support" folder. *See* Compl. ¶ 17. These included: finance and accounting records; contracts; internal emails and social media communications; business development records, including all request for proposal ("RFP") responses; administrative files; human resources documents; IT support files; audit records; and project-specific cost and revenue breakdowns. *See id.* The Complaint notes that the RFP responses included "sensitive information such as pricing strategy, go to market strategies, and the Company's differentiators." *Id.* At least some of the information, it asserts, was "highly valuable

and, if disclosed to one of Paradyme's competitors, could be used to reduce Paradyme's market share and coopt numerous potential business opportunities from Paradyme." *Id.* ¶ 36. Ms. Curto's objections notwithstanding, these allegations support an inference that the documents involved in this dispute included the kind of records a company would want to shield from public view.

Ms. Curto also asserts that Paradyme executives "did not take any reasonable steps to keep the general corporate services information (non-trade secret information) 'confidential' or to limit access." Mot. to Dismiss 4. Again, though, the question at the motion-to-dismiss stage is simply whether Paradyme *alleged* that it took reasonable measures to keep its information secret. Plainly, it did. The Complaint alleges, as a general matter, that Paradyme "implements policies to protect its information and provides regular training to employees, including Ms. Curto, regarding the importance of maintaining confidentiality." Compl. ¶ 37. In particular, it says, the company informs employees as part of its new-hire orientation that the Google Drive system "may be accessed exclusively through an employee's Paradyme account and not with anyone's personal email address or by anyone outside of the Company." *Id.* ¶ 15. It further states the company equipped employees such as Ms. Curto with "Paradyme-authorized security technology," enabling them to access shared drives remotely without the risk of "expos[ing] Paradyme information to an unsecure environment." *Id.* ¶ 33. Most obviously, perhaps, the company sought to preserve the confidentiality of its files by requiring Ms. Curto to sign a nondisclosure agreement as a condition of her employment. *See id.* ¶ 9.

To be perfectly clear, I am not holding that Paradyme has established Ms. Curto's liability under the Maryland or federal trade secrets statutes. I merely conclude that Ms. Curto has not demonstrated that a dismissal of Paradyme's MUTSA or DTSA claims – or, for that matter, any of the company's other claims – would be proper at this time.

Given the delays that already have plagued this case, it is essential to get it on course for orderly disposition. Having denied Ms. Curto's motion to dismiss the complaint, I direct her to file an answer that complies with Fed. R. Civ. P. 8(b), on or before May 27, 2019. Failure to do so may subject her to a motion for entry of a default judgment. Because we have been at this same juncture before in this case and Ms. Curto has failed to file a response as required, I am ordering that she consult with Jason R. Potter, the pro bono attorney that I have appointed for the limited purpose of advising her as to her obligations under the Rules of Civil Procedure, to insure that she understands what is required to file a proper answer (not least of which is a proper caption clearly indicating that it is an answer). Once the answer has been filed, I will issue a scheduling order and discovery will proceed.

## **ORDER**

Accordingly, it is this 3rd day of May, 2019, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant Mary Ellen Curto's Motion to Dismiss (ECF No. 19) IS DENIED; and

2. Ms. Curto SHALL FILE an answer to the Complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure, no later than May 27, 2019. In so doing, she must consult with her court-appointed *pro bono* counsel about her obligations under the Federal Rules and the Local Rules of this Court with respect to the filing of an answer.

Paul W. Grimm
United States District Judge